## Case No. 7,732.

### KERR et al. v. The NORMAN.

#### [1 Newb. 525.] [1]

District Court, E. D. Louisiana.    Dec., 1855.[2]

CARRIERS OF GOODS—LIABILITY FOR INJURY—CONDITION WHEN SHIPPED—EFFECT OF RESHIPMENT.

1. Where it was shown by the bill of lading and the testimony of the shippers that a cargo of coffee was in good order when it left the port of Boston, and it was proven to be in a damaged state when it reached the consignees in New Orleans, the necessary conclusion must be that the damage was caused while it was on board the ship.

2. The coffee having been reshipped in its damaged state to the owners in St. Louis and subjected to an examination there, the report of the witnesses who made that examination may be relied on in ascertaining the extent of the damage in the quality of the coffee, when it arrived at its ultimate destination; and it may also serve as a fair criterion in fixing the amount of damage it had sustained when it was received at this port.

[Libel by Robert Kerr and others against the ship Norman.]

L. Hunton, for libelants

Wolfe & Singleton, for respondent.

McCALEB, District Judge. On the 5th of January, 1854, Clarke, Jones & Co. of Boston, shipped from that port on board the ship Norman, for and on account of the libelants, 200 bags of coffee, and consigned the same to Kennett, Dix & Co. of this city, by whom they were forwarded to the libelants in St. Louis. The bill of lading is in evidence and shows that the coffee was shipped at Boston in good order and condition; and this is fully corroborated by the testimony of those who had charge of the shipment and who were examined under a commission. The evidence given by Clarke, seems to me so clear and satisfactory, as to the good condition of the coffee at the time of shipment, that I cannot doubt that the terms of the bill of lading present a true statement, of not only the ex-

ternal appearance of the sacks, but also of the actual condition of the coffee when it left the hands of the shippers. The parties from whom the coffee was purchased by Clarke, Jones & Co. for the libelants, also show, that it was in perfect order when they delivered it. The conclusion is, therefore, irresistible that the damage sustained by the coffee, was caused after it left the hands of the shippers and while it was under the care and control of those who received it on board of the Norman, and brought it to this port.

In arriving at a satisfactory conclusion as to the amount of damage, the court has no guide except the testimony of the witnesses in this city and those who were examined under a commission in St. Louis. The testimony of the latter may be relied on in ascertaining the extent of the damage in the quality of the coffee when it arrived at its ultimate destination, and it must also serve as a fair criterion in determining the damage sustained when the coffee was received in this port. The causes of the damage were clearly, in my judgment, the result of the fault of those who had charge of the ship; and there is nothing in the evidence which creates the slightest presumption that any additional injury was sustained by the coffee during the few days necessarily required to transport it on board of a steamboat from this port to St. Louis. The original causes of the injury, may have, during those few days, increased the damage to some extent, but this would be too small to be taken into consideration, when the fault of the carrier between Boston and New Orleans has been so clearly established. The depositions of Balle, Finnill and Christopher, surveyors and appraisers in St. Louis, assess the damages thus: 116 bags damaged 25 per cent., that is $550, and 45 bags at 50 per cent., that is $420. Making the aggregate of damage in quality, amount to $970.

The evidence of damage in quantity is not by any means so satisfactory. The witness Haines testifies that at the time the coffee was received at the store of Kennett, Dix & Co., ten or twelve bags had burst, and they had lost one-fifth of the quantity. Wm. R. Clarke the shipper at Boston, says there was 26,844 lbs. in the 200 bags; which would give, say 134 lbs. to each bag. Let us suppose, taking the smaller number mentioned by Haines, that there were ten bags bursted and that each of these bags contained originally 134 lbs., 1,340.

| | |
|---|---:|
| On these there was a loss in quantity of 1-5 | 268 |
| The coffee was worth in Boston 13 cents | 13 |
| | $ 34 84 |
| Add this $34.84 to the loss in quality | 970 00 |
| | $1,004 84 |

For this sum, which I consider the amount of damage fairly deducible from the evidence,

[1] [Reported by John S. Newberry, Esq.]
[2] [Affirmed by circuit court; case not reported.]

I shall order judgment to be entered in favor of libelants, with costs.

This case was taken by appeal to the circuit court of the United States, and the decree of the district court affirmed by Justice Campbell. [Case unreported.]